IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

**FILED**
**U.S. District Court**
**District of Kansas**
09/15/2026
**Clerk, U.S. District Court**
**By: SND Deputy Clerk**

**TEILL REYNOLDS,**
**Appellant,**

**V.** **Case No. 26-3074-JWL**

**ARTHUR D. PEREZ., et., al.,**
**Appellees.**

**RESPONSE TO-MOTION TO RECONSIDER COURTS MEMORANDAM AND ORDER TO SHOW CAUSE**

Plaintiff and Kansas prisoner Teill Reynolds brings this pro se civil rights Acton under 42 U.S.C. 1983 and the Americans with disabilities Act ("ADA"), 42 U.S.C 12101 et seq. Plaintiff is in custody at Lansing correctional facility ("LCF") in Lansing, Kansas and he has been provisionally granted leave to proceed in forma pauperis while he has submitted the banking statement on August 25, 2026. (See Doc 6.) This matter comes now before the court on plaintiffs amended complaint (doc 7) and his response (doc 8) to the courts order provisionally granting leave to proceed in forma pauperis, both filed May 4, 2026.

First, the court has considered plaintiffs response (doc 8) and advises plaintiff that he has met the district court requirements the banking statement was sent and the district court required the plaintiff to pay the filing fee of $405.00 and this was paid on 8/07/26 receipt number 200002818. Additionally, the court has conducted the statutorily required screening of the amended complaint and plaintiff will be granted time to show cause, in writhing why certain claims should not be dismissed for the reasons set forth below.

**I. Nature of the Matter Before the Court**

Plaintiff began this case on March 30, 2026 by filing a complaint that was not on the required form. (Doc. 1.) He filed a complaint on the required form on April 16, 2020. (Doc. 5.) The Court screened that complaint (Doc. 5) and on April 22, 2026, United States Magistrate Judge James P. O'Hara issued **a memorandum and order to show cause** ("MOSC") identifying certain deficiencies in the complaint. (Doc. 6.) The MOSC directed Plaintiff to show cause to the undersigned why the deficient portions of the complaint should not be dismissed or, **in the alternative, to file an amended complaint that cures the deficiencies**. *Id.* Plaintiff has filed his amended complaint (Doc. 7), which is now before the Court.

The sole Defendant named in the amended complaint is LCF Captain Arthur D. Perez, Jr. (Doc. 7, p. 1.) Because all of the claims in the complaint are based on the same factual allegations, the Court will set them forth here. Plaintiff alleges that he was born with a medical condition that has been diagnosed by a Kansas Department of Corrections ("KDOC"). The condition requires Plaintiff to wear certain shoes, hereinafter referred to as "medical shoes," which differ from the shoes generally approved for inmates. *Id.* at 3; (Doc. 7-1, p. 2, 5). The only footwear Plaintiff has been medical shoes and medical boots, which have been approved by the KDOC. (Doc. 7-1, p. 4.) In October 2025, Plaintiff participated in visitation while wearing medical shoes. *Id.* at 2. In December 2025, Plaintiff's father drove from Dallas, Texas to LCF to visit Plaintiff. *Id.* at 3. When Plaintiff went to visitation on December 20, 2025 to see his father, an unidentified LCF officer stated he could not attend the visit because he was wearing medical shoes. *Id.* at 4. Plaintiff provided documentation of his need for medical shoes and KDOC's approval of the medical shoes, but LCF Officer Enoch Baidoo reiterated that Plaintiff could not go to visitation with medical shoes. *Id.* At Officer Baidoo's direction, Plaintiff then went to Defendant's office, where Defendant also told Plaintiff he could not attend visitation with medical shoes. *Id.* Plaintiff gave Defendant the documentation related to his medical shoes. *Id.* Defendant said the documents were "fake" and he was going to call the clinic. *Id.* Defendant then sent Plaintiff back to his assigned pod and sent an LCF Officer to search Plaintiff's cell for other shoes. *Id.* The search revealed no non-medical footwear and when that was reported to Defendant, Defendant acknowledged that Plaintiff had a medical foot condition, but he still denied Plaintiff the visit with his father. *Id.*

In **Count I** of this case, Plaintiff asserts that Defendant violated Title II of the ADA by discriminating against him because of his disability. (Doc. 1, p. 3.) Liberally construed, Count I also asserts a § 1983 claim that Defendant violated Plaintiff's First Amendment right to association by denying him visitation. (Doc. 1, p. 3.) In **Count II,** Plaintiff asserts that Defendant violated Title II of the ADA by failing to provide reasonable accommodation and allowing him to attend the visit wearing medical shoes. *Id.* **In Count III, Plaintiff asserts a § 1983 claim that Defendant violated rights under the Equal Protection Clause of the Fourteenth Amendment by discriminating against him because of his medical condition. *Id.* at 4.** As relief in this matter, Plaintiff seeks "$6,000,000 in compensatory damages and $500,000 for compensatory d[a]mage due to being humiliated and being in fear th[a]t [Defendant] will do this again to [Plaintiff] or another disabled person like [him]." *Id.* at 5.

## II Good Cause to consider and grant claim III compensatory damages

Here in the second amended complaint Mr. Reynolds changed his claim to claim III Captain Perez intentional discriminated against Mr. Reynolds that violates the eighth amendment of deliberate indifference and Mr. Reynolds relies on **Garcia v. Schnurr, 2023 U.S. Dist. LEXIS 35267 and Duvall city of Kitsap** as stated below because compensatory damages are

allowed in Title II ADA and Mr. Reynolds has to show Intentional discrimination in order to be compensated for intentional discrimination.

If the U.S. district court does not except this claim the plaintiff would like to change claim III here to the below:

**claim III Relief Requesting Compensatory Damages for Failure to Make a Reasonable Accommodation, and Intentional Discrimination—under the ADA?**

**Facts**

Here Mr. Reynolds relies on **Garcia v. Schnurr, 2023 U.S. Dist. LEXIS 35267,** Capitan Perez had knowledge from the clinic stating that plaintiff has a medical condition with his feet. captain Perez was required to make a **"disability accommodation"** for Mr. Reynolds medical condition captain **Perez intentionally discriminated** against plaintiff because of his medical condition that was intentional. Captain Perez was later fired for similar conduct and he was forced to retire

**Standard of review**

To recover damages under title II of the ADA, a plaintiff must prove defendant **intentional discrimination** under a deliberate **indifference standard**, Duvall v City of Kitsap 260 f.3d 1124 1138 (9th cir 20010; Punitive damages are not available, Barnes v Gorman 536 u.s 181 189 (2002)' **deliberate indifference** requires both knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that likelihood' DuVall 260 f.3d at 1139. An entity's failure to act "must be a result of conduct that is more than negligent and involves an element of deliberateness" id.

**Arguments & Authorities**

**Intentional Discrimination**

To recover monetary damages under Title II of the ADA , a plaintiff must prove **intentional discrimination** on the part of the defendant. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). [**29] the opportunity to determine the appropriate test for intentional discrimination under the ADA. *See* *id.* at 675; *Memmer*, 169 F.3d at 633; *Midgett v. Tri-County Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 2001 WL 709214 (9th Cir. 2001). Instead, we decided each time to set forth the options, rather than to resolve the issue, leaving subsequent courts to choose between a "deliberate indifference, standard. *See* Ferguson, 157 F.3d at 675 (setting forth, without deciding, the available options); *Memmer*, 169 F.3d at 633 (noting that *Ferguson* had delimited the range of permissible options). **We now determine that the deliberate indifference standard applies.** In so doing, we follow the example of the circuits that have considered the intentional discrimination requirement following our decision in *Ferguson*. *See* *Bartlett v. New York State Board of Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998) *reversed on other grounds*, 527 U.S. 1031, 144 L. Ed. 2d 790, 119 S. Ct. 2388 (1999) (citing *Ferguson* and adopting the deliberate indifference standard); *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) applying deliberate indifference standard to intentional discrimination Moreover, the deliberate indifference standard adopted by those circuits is better suited to the remedial goals of Title II of the ADA than is the discriminatory animus alternative noted. Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a

failure to act upon that the likelihood. City of Canton v. Harris, 489 U.S. 378, 389, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1988); *see also* id. at 395 (O'Connor, J., concurring) (deliberate indifference requires both" some form of notice ... and the opportunity to conform to statutory dictates"). **In *Memmer*, we required the plaintiff to identify "specific reasonable" and "necessary" accommodations that the defendant failed to provide.** 169 F.3d at 633. **When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test and Reynolds has met that**.

A public entity's duty on receiving a request for accommodation is well settled by our case law and by the applicable regulations. It is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation, and we have provided the criteria by which to evaluate whether that is adequate. "Mere[] speculation or failure that a suggested accommodation is not feasible falls short of the reasonable accommodation requirement; the Acts create a duty to gather sufficient information from the **[disabled individual]** **and qualified experts as needed to determine what accommodations are necessary**." *Wong*, 192 F.3d at 818 (all but first alteration in original; citation and internal quotation marks omitted). Furthermore, the Kansas department of correction require the public entity to "give primary consideration to the requests of the individual with disabilities" when determining what type of aid and service is necessary. 28 C.F.R. § 35.160(b)(2). Accordingly, a public entity does not "act" by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable. Because in some instances events may be attributable to bureaucratic slippage that constitutes negligence rather than deliberate action or inaction, we have stated that deliberate indifference does not occur where a duty to act may simply have been overlooked, or a complaint may reasonably have been deemed to result from events taking their normal course. *See* Ferguson, 157 F.3d at 675. **Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness.** *See* Bartlett, 156 F.3d at 331; *Matthews v. Jefferson*, 29 F. Supp. 2d 525, 535-536 (W.D. Ark. 1998) (notice combined with failure to provide appropriate facilities may violate Title II). To establish a prima facie claim **under** § 504, a plaintiff must demonstrate that '(1) plaintiff is handicapped **under** the Act; (2) [he] is "otherwise qualified" to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminated against plaintiff'" based upon a disability. *Barber*, 562 F.3d at 1228 (quoting *Hollenbeck v. U.S. Olympic Comm.*, 513 F.3d 1191, 1194 (10th Cir. 2008)); *accord* *Wagoner v. Lemmon*, **[*1263]** 778 F.3d 586, 592 (7th Cir. 2015); *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998); *Duffy v. Riveland*, 98 F.3d 447, 454 (9th Cir. 1996)."The Supreme Court has recognized that § 504 is intended to ensure that 'an otherwise qualified handicapped individual [is] provided with *meaningful access* to the benefit that the grantee offers . . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made.'" *Barber*, 562 F.3d at 1229 (alterations in original) (emphasis added) (quoting *Alexander v. Choate*, 469 U.S. 287, 301, 105 S. Ct. 712, 83 L. Ed. 2d 661 (1985)); *accord* *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008). "Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to

participate in and benefit from programs receiving federal assistance. The Act does not, however, guarantee the handicapped equal results" from participation in such programs and services. *Alexander*, 469 U.S. at 304 (citation omitted); *cf. Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 146 (1st Cir. 2014) (holding, in the context of a prisoner's claim against a prison system, that § 504 "entitle[s] [a disabled individual] to reasonable accommodations, not to optimal ones finely tuned to his preferences"). The plaintiff bears the burden of establishing that the defendant "discriminated against the handicapped" in the offered program or service by failing to provide meaningful access to the program and service, "such that the need for a remedial interactive process aimed at finding a reasonable accommodation was triggered." *Barber*, 562 F.3d at 1233 (Gorsuch, J., concurring).

In construing the scope of liability **under** § 504 of the Rehabilitation Act, we may not only reference cases decided **under** that statute, but also cases decided **under** Title II of the ADA. "The ADA enlarges the scope of the Rehabilitation Act to cover private employers, but the legislative history of the ADA indicates that Congress intended judicial interpretation of the Rehabilitation Act to be incorporated by reference when interpreting the ADA." *Nielsen v. Moroni Feed Co.*, 162 F.3d 604, 608 n.7 (10th Cir. 1998); *accord Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1186 n.6 (10th Cir. 2011); *see also* 42 U.S.C. § 12201 ("Except as otherwise provided in this chapter, nothing in this chapter shall be construed to apply a lesser standard than the standards applied **under** title V of the Rehabilitation Act of 1973 (29 U.S.C. 790 et seq.) . . . .").

**Mr. Reynolds seeks only damages on based on his § 504 claim,1-3** and "[t]o recover **compensatory damages under** § 504, a plaintiff must establish that the agency's **discrimination** was **intentional**." *Barber*, 562 F.3d at 1228; *see Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) ("We agree with the course charted by our sister circuits and hold that entitlement to **compensatory damages under** section 504 of the Rehabilitation Act requires proof the defendant has intentionally discriminated against the plaintiff."); *accord Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 342 (11th Cir. 2012); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009); **[*1264]** *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001); *see also Meagley v. City of Little Rock*, 639 F.3d 384, 390 (8th Cir. 2011) (noting that "[e]very circuit court to address the issue . . . has reaffirmed that **intentional discrimination** must be shown to recover **compensatory damages**" **under** the Rehabilitation Act).

Deliberate indifference is sufficient to satisfy the **intentional-discrimination** requirement for **compensatory damages under** § 504: "[I]ntentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Powers*, 184 F.3d at 1153; *accord Barber*, 562 F.3d at 1228-29; *see also J. V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1298 & n.6 (10th Cir. 2016) (citing *Barber* and applying "the same standard to ADA **intentional discrimination** cases because, '[t]o the extent feasible, we look to decisions construing the Rehabilitation Act to assist us in interpreting analogous provisions of the ADA'" (alteration in original) (quoting *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011))); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013) (following "in the footsteps of a majority of our sister courts and hold[ing] that a showing of deliberate indifference may satisfy a claim for **compensatory damages under** § 504"); *Liese*, 701 F.3d at 348 (adopting a deliberate-indifference standard based, in part, upon "the overwhelming body of circuit case law, and [a] review of the

pertinent [statutory] analogs"); Meagley, 639 F.3d at 389 (citing *Barber* and adopting a deliberate-indifference standard).

This deliberate-indifference standard is consistent with the purposes animating the Rehabilitation Act. In this regard, "the Supreme Court has instructed Rehabilitation Act was adopted not only to curb 'conduct fueled by discriminatory animus,' but also to right 'the result of apathetic attitudes rather than affirmative animus.'" *Powers*, 184 F.3d at 1152 (quoting *Alexander*, 469 U.S. at 295 ("Discrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect.")). The deliberate-indifference standard "does not require a showing of personal ill will or animosity toward the disabled person." *Barber*, 562 F.3d at 1228; *Meagley*, 639 F.3d at 389 (quoting *Barber*, 562 F.3d at 1228). The plaintiff must show, however, "(1) [that the defendant had] 'knowledge that a harm to a federally protected right [was] substantially likely,' and (2) 'a failure to act upon that . . . likelihood.'" *Barber*, 562 F.3d at 1229 (omission in original) (quoting *Duvall*, 260 F.3d at 1139); *accord J. V.*, 813 F.3d at 1298; *S.H.*, 729 F.3d at 265.

As to the second prong, "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness." *Barber*, 562 F.3d at 1229 (alteration in original) (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002)); *accord J. V.*, 813 F.3d at 1298; *see Duvall*, 260 F.3d at 1139 (observing that "bureaucratic slippage" does not amount to deliberate indifference, nor does "deliberate indifference . . . occur when a duty to act may simply have been overlooked"); *Ferguson v. City of Phoenix*, 157 F.3d 668, 675 (9th Cir. 1998) (holding that "not uncommon bureaucratic inertia" in updating a city's 9-1-1 system to make it accessible to the hearing-disabled, coupled with "some lack of knowledge and understanding" about regulatory requirements, did not amount to deliberate indifference); *cf. McCulley v. Univ. of Kan. Sch. of Med.*, 591 F. App'x 648, 651 **[*1265]** (10th Cir. 2014).

Here, Reynolds provided sufficient evidence to create a triable issue as to whether Perez, and Baidoo, one of whose jobs was that of captain, and Sargent, two of the County defendants, had notice of his need for the accommodation involved and that they failed despite repeated requests to take the necessary action. Viewing the facts in the light most favorable to Reynolds, Reynolds father (exhibit A letter) telephoned Perez to request visit the next day and it was denied. He failed to accommodate after his investigation whether such visit was available (despite already having, and he deliberately made the decision, instead, to" accommodate" his disability by rescheduling the visit on the next day. Reynolds also informed Baidoo, and Perez, to accommodations for visit for the next day because he had proper documentation for his visit, they were inadequate with respect to his disability and specifically requested visit for the upcoming day was denied.

By his own admission, Perez had the authority to arrange an accommodation for Reynolds, but made no effort to contact visitation or correct his misconduct. Perez made a deliberate decision to deny Reynolds, and his father requests for a visit that Sunday without making any effort to determine whether it would have been possible to provide the requested accommodation. Similarly, in response to Reynolds request for accommodation, Nonetheless, Perez denied his request without investigating whether the facilities could reschedule for Sunday would accommodate Reynolds needs. If Reynold's account of the timing and content of his requests for accommodation and defendants' reactions thereto are accurate, a trier of fact could

conclude that defendants' decisions not to accommodate him were considered and deliberate, Accordingly, viewing the record as we must on Reynolds has presented sufficient evidence to show, **deliberate indifference and thus intentional discrimination**, on the part of Baidoo, Perez

Reynolds sues the department of correction directly under the ADA and also indirectly, under 42 U.S.C. § 1983. When a plaintiff brings a direct suit under Title II of the ADA against a municipality (including a county), the public entity is liable for the vicarious acts of its employees. We have held that, under 42 U.S.C 12131 (upon which the ADA was explicitly modeled), **which is to eliminate discrimination against the handicapped**." *Bonner v. Mr. Lewis*, 857 F.2d 559, 566-567. These same considerations apply to Title II of the ADA. *See* *Zukle*, 166 F.3d at 1045 n.11 (holding that, under 42 U.S.C. 12131, the "remedies, procedures, and rights" available under Title II of the ADA are available. The County is therefore vicariously liable for the actions of the two County employees, Perez.

## A. Relief Requested

The plaintiff is requesting that the district court apply **Title II of the ADA 42 U.S.C. 12131, 12132 et seq., prohibits discrimination of the basic of a disability in the programs, services, or activities of a public entity. Federal regulation generally requires a public entity to "Make reasonable modification in procedures when the modification is necessary to avoid discrimination on the basis of disability 28 C.F. R 35.130(b)(7)(i).** This is **intentional disability discrimination** under the deliberate indifference standard, the plaintiff seeks **"compensatory damages"** see **furgess 933 f,.3d at 289** see also **Durham 82 f4th at 226: Matthews 827 fed apex at 187 S.H ex rel Durrell 729 f.3d at 261** (claims for compensatory damages under **title II of the ADA** also requires a finding of intentional discrimination") id at 263 ("[A] showing of deliberate indifference may satisfy a claim for compensation damager that a harm to a federally protected right is substantially likely and (2) a failure to act upon that likelihood see S.H ex rel Durrell 729 f.3dat 263. Claim I, II, and III here has been met under all three claims of the plaintiff case. The plaintiff also seeks relief under **42 u.s.c 12131-12132** kdoc failed to accommodate his disability, and he cannot be subjected to discrimination by and such entity see **42 u.s.c 12132**, the act authorizes suits by inmates for money damages against public entities that violate **12131-12133 (incorporating by reference 27 U.S.C 794a**) the act defines "public entity" to include" and state local government and any department agency... this term includes state prisons see u.s Georgia 546 u.s 151 154 (2006). **The plaintiff seeks compensatory damages under ADA title II 42 u.s.c 12131-12132 and not declaratory/or injunctive relief. Mr. Reynolds seeks $6,000,000in compensatory damages and whatever the court see fit. The plaintiff requests this relief to keep this public entity from discrimination on someone else who has a physical handicap.**

**B. Counts I and II**

The Court has reviewed Counts I and II and concludes that, as they are pled in the amended complaint and attachments thereto, they are sufficient to survive the statutorily required screening. The Court notes, however, that with respect to the ADA claims in Counts I and II, III Plaintiff may sue Defendant only in his official capacity. *See* *Garcia v. Schnurr*, 2021 U.S. Dist. LEXIS 110528, 2021 WL 2413391, *4 (D. Kan. June 14, 2021) (unpublished) ("The proper defendant in a Title II ADA claim is the

public entity itself or an official acting in his or her official capacity on behalf of the public entity.").

**C. Count III**

**Claim III: Relief Requesting Compensatory Damages for Failure to Make a Reasonable Accommodation, and Intentional Discrimination—under the ADA?**

"[T]o recover compensatory damages under § 504 [of the Rehabilitation Act], a plaintiff must establish that the agency's **discrimination** was **intentional**." Barber ex rel. Barber v. Colo. Dep't of Revenue, 562 F.3d 1222, 1228 (10th Cir. 2009) (citation omitted). And we "look to decisions construing the Rehabilitation Act to assist us in interpreting analogous provisions of the ADA." J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1298 n.6 (10th Cir. 2016) (quotation omitted).Further, several of our sibling circuits have directly held that a plaintiff cannot recover compensatory damages under Title [**4] II of the ADA without establishing **intentional discrimination**. See McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1146-47 (11th Cir. 2014) ("To prevail on a claim for compensatory damages under either the [Rehabilitation Act] or the ADA, a plaintiff must show that a defendant violated his rights under the **statutes** and did so with discriminatory intent."); Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003); Delano-Pyle v. Victoria Cty., 302 F.3d 567, 574 (5th Cir. 2002); Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). We agree.

CONCLUSION

For the reasons set forth above, count III of this (MOSC) the plaintiff asks this court to amend this claim as for Claim III for monetary relief in this matter are subject to approval under Title II of the ADA. The court further concludes that counts I and II, as pled in the amended complaint and attachments thereto, are sufficient to pass the statutorily required screening of this case. The petitioner request that claims III be granted due to being allowed monetary relief under title II of the ADA and the plaintiff has shown cause in writing why count III and his request for monetary relief should be granted. The plaintiff is also allowed monetary relief on the defendant failure to make accommodation and intentionally discriminating against him in this matter as well.

Respectfully submitted

Teill Reynolds #2000073386
L.C.F. P.O. box 2
Lansing KS 66043

September 5,2026 in Kansas City Kansas