FILED
U.S. District Court
District of Kansas
09/28/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**TEILL REYNOLDS,**

**Plaintiff,**

**v.** **CASE NO. 26-3074-JWL**

**ARTHUR D. PEREZ, JR., et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff and state prisoner Teill Reynolds brings this pro se civil rights action under 42 U.S.C. § 1983. He is in custody at Lansing Correctional Facility (LCF) in Lansing, Kansas. This matter comes now before the Court on Plaintiff's response to the memorandum and order to show cause ("MOSC") issued by the Court on May 8, 2026. For the reasons explained below, Count III of the amended complaint will be dismissed. As to Counts I and II against the sole defendant named in the amended complaint, the Court concludes that a responsive pleading is required. Thus, the Court will enter a separate e-service order directing service on the defendant.

## I. Procedural History

Plaintiff began this case on March 30, 2026 by filing a complaint that was not on the required form. (Doc. 1.) He filed a complaint on the required form on April 16, 2020. (Doc. 5.) Because Plaintiff is a prisoner and had been provisionally granted leave to proceed in forma pauperis, the Court was required by statute to screen Plaintiff's complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). United States Magistrate Judge James P. O'Hara conducted the screening and on

April 22, 2026, issued a memorandum and order to show cause ("MOSC") identifying certain deficiencies in the complaint. (Doc. 6.) The MOSC directed Plaintiff to show cause to the undersigned why the deficient portions of the complaint should not be dismissed or, in the alternative, to file an amended complaint that cures the deficiencies. *Id.* Plaintiff timely filed an amended complaint (Doc. 7) on May 4, 2026.

The Court screened the amended complaint and, on May 8, 2026, issued a second MOSC. (Doc. 9.) The second MOSC described the amended complaint as follows:

> The sole Defendant named in the amended complaint is LCF Captain Arthur D. Perez, Jr. (Doc. 7, p. 1.) Because all of the claims in the [amended] complaint are based on the same factual allegations, the Court will set them forth here. Plaintiff alleges that he was born with a medical condition that has been diagnosed by a Kansas Department of Corrections ("KDOC"). The condition requires Plaintiff to wear certain shoes, hereinafter referred to as "medical shoes," which differ from the shoes generally approved for inmates. *Id.* at 3; (Doc. 7-1, p. 2, 5). The only footwear Plaintiff has are medical shoes and medical boots, which have been approved by the KDOC. (Doc. 7-1, p. 4.) In October 2025, Plaintiff participated in visitation while wearing medical shoes. *Id.* at 2.
>
> In December 2025, Plaintiff's father drove from Dallas, Texas to LCF to visit Plaintiff. *Id.* at 3. When Plaintiff went to visitation on December 20, 2025 to see his father, an unidentified LCF officer stated he could not attend the visit because he was wearing medical shoes. *Id.* at 4. Plaintiff provided documentation of his need for medical shoes and KDOC's approval of the medical shoes, but LCF Officer Enoch Baidoo reiterated that Plaintiff could not go to visitation with medical shoes. *Id.* At Officer Baidoo's direction, Plaintiff then went to Defendant's office, where Defendant also told Plaintiff he could not attend visitation with medical shoes. *Id.*
>
> Plaintiff gave Defendant the documentation related to his medical shoes. *Id.* Defendant said the documents were "fake" and he was going to call the clinic. *Id.* Defendant then sent Plaintiff back to his assigned pod and sent an LCF Officer to search Plaintiff's cell for other shoes. *Id*. The search revealed no non-medical footwear and when that was reported to Defendant, Defendant acknowledged that Plaintiff had a medical foot condition, but he still denied Plaintiff the visit with his father. *Id.*
>
> In Count I of this case, Plaintiff asserts that Defendant violated Title II of the ADA by discriminating against him because of his disability. (Doc. 1, p. 3.) Liberally construed, Count I also asserts a § 1983 claim that Defendant violated

> Plaintiff's First Amendment right to association by denying him visitation. (Doc. 1, p. 3.) In Count II, Plaintiff asserts that Defendant violated Title II of the ADA by failing to provide reasonable accommodation and allowing him to attend the visit wearing medical shoes. *Id.* In Count III, Plaintiff asserts a § 1983 claim that Defendant violated rights under the Equal Protection Clause of the Fourteenth Amendment by discriminating against him because of his medical condition. *Id.* at 4. As relief in this matter, Plaintiff seeks "$6,000,000 in compensatory damages and $500,000 for emotional d[a]mage due to being humiliated and being in fear th[a]t [Defendant] will do this again to [Plaintiff] or another disabled person like [him]." *Id.* at 5.

(Doc. 9, p. 2-3.)

After setting out the applicable screening standards, the second MOSC reiterated Judge O'Hara's statement in the first MOSC that "'Plaintiff's requests for compensatory and emotional damages are barred by 42 U.S.C. § 1997e(e)[] because Plaintiff has failed to allege a physical injury'" and that § 1997e(e) applies regardless of the rights being asserted. *Id.* at 4-5 (quoting Doc. 6, p. 5-6). The second MOSC explained that the amended complaint also could be liberally construed to also seek injunctive or declaratory relief, which is not barred by § 1997e(e). *Id.* at 5. It stated that Counts I and II of the amended complaint "are sufficient to survive the statutorily required screening," but "with respect to the ADA claims in Counts I and II, Plaintiff may sue Defendant only in his official capacity." *Id.* at 5.

As to Count III of the amended complaint, which asserted an equal protection claim, the second MOSC stated:

> "The Equal Protection Clause of the Fourteenth Amendment provides that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" *A.N.*, 928 F.3d at 1196 (quoting U.S. Const. amend. XIV, § 1). This is "essentially a direction that all persons similarly situated should be treated alike." *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016) (quotations omitted).
>
> An equal protection claim may challenge legislation or the conduct of individual state actors. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 130-31, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994);

> *Home Tel. & Tel. Co. v. City of L.A.*, 227 U.S. 278, 287-88, 33 S. Ct. 312, 57 L. Ed. 510 (1913). It "may be asserted with respect to a group or a 'class of one.'" *A.N.*, 928 F.3d at 1196 (quoting *A.M.*, 830 F.3d at 1166). The former is more common and concerns a "governmental classification[ ] that affect[s] some groups of citizens differently than others." *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (quotations omitted).
>
> *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021). To proceed on an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631-32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).
>
> Even liberally construing the pro se amended complaint and attachments thereto, Plaintiff has not identified any other individual who is similarly situated to Plaintiff in all material respects but was treated differently. Although he identifies Count III as bringing an Equal Protection claim, Plaintiff focuses in Count III on the ADA, discussing intentional discrimination and reasonable accommodation, which are claims already raised in Counts I and II, respectively. (*See* Doc. 7, p. 4; Doc. 7-1, p. 6-7.) Accordingly, Count III, which asserts an Equal Protection claim, is subject to dismissal for failure to state a claim on which relief could be granted.

(Doc. 9, p. 5-6.) The second MOSC concluded by granting Plaintiff time "to show cause, in writing, why Count III and his requests for monetary relief should not be dismissed." *Id.* at 6-7.

Instead of filing a response to the second MOSC, Plaintiff filed a second amended complaint, which this Court ordered stricken from the record because Plaintiff had not obtained leave to file a second amended complaint, as required. (*See* Doc. 15.) In the order striking the unauthorized second amended complaint, the Court noted that the second MOSC granted Plaintiff time to show cause why parts of the amended complaint should not be dismissed; it did not grant leave to file a second amended complaint. *Id.* at 2-3. The Court extended the deadline for Plaintiff to respond to the second MOSC. *Id.* at 3.

Plaintiff then filed an unauthorized third amended complaint, which the Court struck from the record for the same reasons as the unauthorized second amended complaint. (*See* Doc. 17.)

The Court again advised Plaintiff of the deadline to respond, in writing, to the second MOSC. *Id.* On September 15, 2026, Plaintiff timely filed a response to the second MOSC. (Doc. 19.)

**II. Discussion**

In his response, Plaintiff restates the Court's discussion of the equal protection claim in Count III of the amended complaint, then contends that in the second amended complaint, he "changed his claim" in Count III to a claim of intentional discrimination in violation of the Eighth Amendment. (Doc. 19, p. 1-2.) This argument fails because, as previously explained, the Court struck the unauthorized second amended complaint from the record. In the alternative, Plaintiff asks the Court to "change" Count III to allege an ADA claim based on intentional discrimination and the failure to make a reasonable accommodation, which he asserts would allow him to recover compensatory money damages. *Id.* at 3. He presents argument and legal authority in support of this alternative Count III. *Id.* at 3-8. Plaintiff advises this Court that he "seeks $6,000,000 in compensatory damages and whatever the court see fit" and "not declaratory/or injunctive relief." *Id.* at 7 (all errors in original). He asks that this Court refrain from dismissing his requests for monetary relief and allow him to proceed not only Counts I and II, but also the further-amended version of Count III. *Id.* at 7-8.

The Court has previously directed Plaintiff's attention to Federal Rule of Civil Procedure 15, which sets forth the requirements for moving to amend a pleading. Under Rule 15(a), after Plaintiff amended his initial complaint, he could "amend [his] pleading only with the opposing party's consent or the court's leave." *See* F. R. Civ. P. 15. In addition, Local Rule 15.1(a) provides that "a party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right must," among other requirements, "attach the proposed pleading or other document" to the motion. Plaintiff has complied with neither Rule; he has not

filed a separate motion for leave to file a second amended complaint with an attached and complete proposed second amended complaint. Thus, to the extent that the response to the second MOSC seeks to amend Count III, it is denied. Count III of the amended complaint will be dismissed for the reasons set forth in the second MOSC.

To the extent that Plaintiff's response to the second MOSC asks that the Court refrain from dismissing his requests for monetary relief, however, it will be granted. The Court's independent research reflects that how 42 U.S.C. § 1997e(e) applies to Title II of the ADA is not a settled matter. The Tenth Circuit does not appear to have spoken directly to the issue.

The sole case in which this Court did so simply stated that § 1997e(e)'s "limitation applies to ADA claims" without further explanation other than a citation to *Cassidy v. Ind. Dep't of Corrs.*, 199 F.3d 374, 376 (7th Cir. 2000). *See Beem v. Kansas*, 2012 WL 1534592, *4 (D. Kan. Apr. 30, 2012) (unpublished). On the other hand, at least one other district court within the Tenth Circuit has disagreed with *Cassidy* and recognized its limitations. *See McClendon v. City of Albuquerque*, 2000 WL 36739638, *4 (D. N.M. Aug. 22, 2000) (unpublished) ("respectfully disagree[ing] with the Seventh Circuit's ultimate conclusion" in *Cassidy* and noting that it "said nothing of whether a prisoner's claims for reasonable accommodations would be similarly limited by the PLRA"). The Court concludes that the unsettled nature of whether § 1997e(e) bars prisoners' ADA Title II discrimination and accommodation claims makes it a question that should not be dispositively decided during this preliminary screening phase of Plaintiff's case.

## III. Conclusion

To summarize, Count III of the amended complaint will be dismissed because it fails to state a plausible claim for relief. With respect to Counts I and II, the Court concludes that a

responsive pleading is necessary. The Court will enter a separate order directing service on the defendant.

**IT IS THEREFORE ORDERED BY THE COURT** that Count III of the operative amended complaint is dismissed from this matter without prejudice because it fails to state a claim on which relief could be granted. This case will proceed on Counts I and II only. A separate e-service order will be entered.

**IT IS SO ORDERED**.

Dated September 28th, 2026, in Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE